Yolanda Huang (Cal. Bar No. 104543)
LAW OFFICES OF YOLANDA HUANG
P.O. Box 5475
Berkeley, CA 94705
Ph/Fax: (510) 329-2140
Email: yhuang.law@gmail.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| LACARLA CARR, ALEXCIS HERRERA, THEA HOPKINS, SILVIA MONTOYA, DAMENA PAGE, GIOVANNA RAMIREZ-HERNANDEZ, MARILYN SAHAGUN-LOPEZ, KIMBERLY BOYD, and KATELYN WILLIAMS, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF'S OFFICE, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, SHERIFF PAUL MIYAMOTO, in his individual capacity; JENNIFER COLLINS, Chief of Custody for the San Francisco Sheriff's Office, in her individual capacity; LISA PRATT, M.D., in her individual capacity as the former Director of Jail Health Services, and ROLAND PICKENS, Chief Administrator for the San Francisco Health Network, in his official capacity, <br><br> Defendants. | Case No.: <br><br> **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES 42 U.S.C. 1983** <br><br> **CLASS ACTION** <br><br> **Violations of the 8th and 14th Amendments of the U.S. Constitution and Article I, Sections 7 and 17 of the California Constitution.** <br><br> **DEMAND FOR JURY TRIAL** |

1

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

**INTRODUCTION**

1.    San Francisco's County Jail 2 ("**CJ2**") does not met California building code requirements and has never done so.

2.    CJ2 houses primarily pretrial detainees, both men and women.

3.    Both CJ2 lacks both an outdoor yard and sufficient exercise space. There is no outdoor access for inmates. The exercise space is does not meet the size requirement of 24 Cal. Code Regs. §1231.2.10, or the requirement of an outdoor exercise area with access to natural light and fresh air.

4.    Inmates at CJ2 are never permitted outdoor access. They have no opportunity to be exposed to direct sunlight and live under artificial light 24 hours a day.  Inmate sleeping areas have glass in the walls, which permit a distant view of the outside, but no sunlight enters the jail.

5.    The deprivation of outdoor light and sunlight, combined with constant exposure to artificial interior lighting, causes inmates to suffer harm to their circadian rhythms and a range of associated health conditions. These illnesses include skin issues, sleep disruption and sleep disorders, blood sugar and endocrine disorders, metabolic syndrome, digestive issues, immune system disruptions, headaches, lethargy, memory loss, dementia and impairment of their eyesight.

6.    In addition to failing to meet minimum physical requirements for an inmate exercise area, Defendants do not make, what inmate exercise space there is, available to inmates to use.

7.    San Francisco's County Jail 2 ("CJ2") is now old, dilapidated, and suffering from deferred maintenance. Chronic plumbing malfunctions include plumbing backups and inadequate hot water.

8.    In CJ2, inmates at CJ2 are limited in being able to access toilets and to flush toilets.

9.    CJ2 also has insect infestation and water damage in the walls and floors.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

10. The food at CJ2 is heavy on starch and sugar and low in fresh fruits and vegetables, further aggravating inmates' chronic health conditions.

11. Women inmates suffer from fewer privileges, less access to fewer jail jobs, and until recently, overcrowding and a total lack of access to programming as compared to male inmates. The other jails operated by Defendants - County Jail 3 ("CJ3") and County Jail 3 Annex ("CJ3 Annex") both located in San Bruno- have at least some outdoor space, and are therefore able to provide inmates with some access to sunlight. Men at CJ2 have the possibility of being transferred to CJ3 where they may obtain some sunlight access. Women inmates have no such option available to them.

12. Defendants MIYAMOTO, COLLINS, PRATT and PICKENS through Jail Health Services respond to the unhealthy and illness-inducing conditions at CJ2 primarily by dispensing pharmaceuticals so that inmates can endure the unhealthy and chronic illness causing conditions of CJ2, and rather than addressing inmates' genuine health needs and welfare.

13. This civil rights class action lawsuit seeks to remedy the unconstitutional conditions at CJ2, located at 425 7th Street, San Francisco; and to remedy the disparity in treatment and options female inmates face as compared to male inmates incarcerated in CJ2.

14. The named Plaintiffs are currently inmates in CJ2 and bring this action on behalf of themselves and those similarly situated against the City and County of San Francisco, the City and County of San Francisco Sheriff's Office, Sheriff Miyamoto, the Sheriff of the City and County of San Francisco in his individual capacity, JENNIFER COLLINS , the Chief of Custody for the City and County of San Francisco Sheriff's Office in her individual capacity; and LISA PRATT, M.D., in her individual capacity as the medical director of Jail Health Services and ROLAND PICKENS,

3

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

the chief executive officer of San Francisco Health Network of which Jail Health Services is a subsidiary agency, in his official capacity.

15.     Plaintiffs seek to represent a class of inmates and seek a declaration that Defendants' ongoing policies and practices violate their constitutional and statutory rights, and further, seek injunctive relief compelling Defendants to provide all prisoners in CJ2 with:

a)     Daily access to sunlight, including sunlight on their skin;

b)     Sufficient space and access to exercise [24 CCF §1231.2.10];

c)     Food sufficiently healthful to allow inmates to control maintain their health without pharmaceuticals;

d)     Sufficient hot water so that all prisoners can obtain a hot shower, and maintain personal sanitation as mandated [Title 15];

e)     Adequate maintenance and sanitation to provide living quarters with functioning toilets, free of insects, mold, bacteria, water intrusion and other pests and pathogens;

f)     Genuine health care rather than pharmaceutical maintenance; and

g)     Damages.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (in that Plaintiffs' claims arise under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution) and 28 U.S.C. § 1343(a)(3)-(4) because Plaintiffs seek injunctive relief as well as compensatory and punitive damages for the deprivations, under color of state law, of their rights as citizens of the Unite States that are secured by the United States Constitution, pursuant to 42 U.S.C.

4

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

§§1983 and 1988. This Court has supplemental jurisdiction of the state claims under 28 U.S.C. § 1367.

17.     Venue is proper in the United State District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Northern District of California and all or a substantial part of the events or omissions giving rise to the action occurred in the Northern District of California.

18.     Intradistrict venue is proper in the San Francisco Division or the Oakland Division of the Northern District of California pursuant to Civil Local Rule 3-2(d) because all or a substantial part of the events or omissions giving rise to the action occurred in the County of San Francisco, California.

## EXHAUSTION

19.     Plaintiffs and members of the class filed numerous grievances and exhausted the administrative remedies with the San Francisco Sheriff's Office. The San Francisco Sheriff's Office accepted some grievances and denied the grievances they permitted to be filed or refused to accept grievances. Defendants have taken no action to correct these problems.

20.     Plaintiffs individually and as a group filed government claims with the CITY AND COUNTY OF SAN FRANCISCO regarding their claims and the claims on March 23, 2026, which were rejected by the City and County of San Francisco on April 13, 2026.

## JURY DEMAND

21.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. § 38(b).

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

## PARTIES

**Plaintiffs**

22.    **LaCarla Carr** is a pretrial detainee and has been in custody since December 23, 2014. Since incarceration, she has developed multiple, chronic, incurable illnesses for which she is prescribed medications by defendants.   From December 2014 to March 2026, La Carla Carr was housed in B Pod in CJ2. During that period B Pod was the only housing pod for women and all the women – 70 or more – were overcrowded into B Pod. In B Pod, none of the women were provided programming. After protests, including community protest, from March 2026 onwards, she and some of the women inmates are being housed in D Pod and provided access to programming. Before incarceration she weighed 165 pounds. Her current weight is 230 pounds. In 2018, she was diagnosed with type 1 diabetes and receives insulin a total of 4 times a day, with each meal and before she sleeps. Since incarceration, she has developed disturbance sleep issues. She wakes up three to four times a night and is awake from 30 to 60 minutes each time. During the day she has a hard time staying awake. After walking up at 7:30 am during the morning wake up call, she generally has to take a nap at 10 am. The jail prescribes melatonin which is not effective. Carr, since incarceration has also developed high blood pressure. She has been taking a prescription medication for hypertension once a day since 2018. Carr has also had recurring digestive issues since 2015 and is prescribed stool softeners. She now has back problems that have been going on and off from 2023 to the present. She stated that during these times, the nurse in the jail prescribes her muscle relaxer. Since January 2025, Carr has also had vision changes and is now nearsighted. In the 12 years of incarceration  she has been totally denied access to direct sunlight. Nor does she get access to fresh air. Although CJ2 has a gym, she is only provided access once every two weeks.

6

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

23.    **Alexcis Herrera** is a pretrial detainee and has been in custody since April 2, 2024. For almost two years, she was housed in B Pod, and moved to D Pod sometime in March, 2026. Prior to incarceration, in her late 30s, she was diagnosed as diabetic. She was able to control her diabetes without medication, per the advice of her medical doctor by eating a well-rounded, low carbohydrate diet with plenty of fruits and vegetables and exercising regularly. In jail the diet is heavily starch and carbohydrate based with only minimal fruits and vegetables. There is no space to exercise, and she is only offered access to the gym once or twice a month. Since incarceration she has gained 50 to 60 pounds and the jail has placed her on a GLP medication. She is also prescribed insulin, and multiple pharmaceutical medications which she did not require before incarceration.

24.    She has developed arthritis in her hip and has a pinched nerve from C5 to C6, which her doctor believes is likely due to the poor bunk quality. She has swelling in her right knee, which she has a lidocaine patch for. She has difficulty staying asleep throughout the night and often wakes up. For sleep, she is prescribed a pharmaceutical sleep medication. Over the course of her incarceration, her dosage has increased from 30mg to 45mg to 60mg. She has developed the inability to see close up or far away, describing her vision as "grainy." She has developed skin discoloration on her face that she did not have prior to incarceration.

25.    **Thea Hopkins** has been in custody since January 2025. Briefly released, she was booked again on January 2, 2026. Since incarceration she has gained 65 pounds and now weighs over 200 pounds. She now has anxiety attacks and has been prescribed Remeron (mirtazapine) . The initial dosage was 15 milligrams which was increased to 45 milligrams to assist her with sleeping at night. In addition, she is prescribed melatonin each night as well. Even with Remeron (mirtazapine) and melatonin, she still has difficulty with sleep at night, waking up at night frequently, and then has difficulty falling back asleep. She is fatigued during the day. Since incarceration she has had

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

vision changes and now needs glasses to read. She thinks that she is more susceptible to illness since incarceration, and has had multiple dental issues, including losing a tooth while in CJ2.

26.    **Silvia Montoya**, is a pretrial detainee and has been in custody for more than a decade-- since June 30, 2015. She's been unable to maintain her weight, losing and gaining and at present is 25 pounds heavier than when she was first incarcerated. She has migraine headaches almost every day. She now suffers from hypertension, which developed after she was incarcerated. She wakes up in the middle of the night, sometimes as many as four times a night. She is tired every day, during the day. After 11 years in jail, her body feels broken.  Silvia Montoya worked for years as an inmate worker. Now, female inmates are limited to certain jail jobs, and none of them outside the housing unit.  The jail jobs which provide more freedom and out of cell time are provided only to men.

27.    **Damena Page** is a pretrial detainee and has been in custody since October 14, 2020. When she was first incarcerated, she weighed 180 pounds. She ballooned to 265 and is now down to 220 pounds. She is low in Vitamin D, has daily headaches, has hypertension and is pre-diabetic. She has difficulty sleeping, waking up every night for 2 to 3 hours. She has regular digestive issues and skin eruptions. Since incarceration she has never had the opportunity to have sunlight on her skin. She has not been outdoors. The space inside the pod is insufficient to really exercise, and she is only offered an opportunity to go to the gym once or twice a month. Since at least August 2021, the hot water in B Pod has been intermittent, so that hot showers were not possible. The only showers available were cold, and it was difficult to maintain personal cleanliness. Insect and vermin at the CJ2 are regular problems. She has had lice and scabies at least ten (10) times while incarcerated. This is because the jail puts newly booked inmates right into their cells without having them wash and many new books are people who were homeless, so they bring in vermin. There are bugs in her cell, and the jail regularly sends the exterminator, but the bugs return. Often toilets and showers are

8

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

not available because the plumbing overflows. Or they are told that they can only flush once or twice an hour, which means that they have to live in cells with full toilets. The toilets have no cover. The jail food is repetitive, and often under cooked. She knows that the food is not heated to the required temperature and when you eat the food, it causes diarrhea and upset stomachs. Therefore, whenever she has the opportunity, she takes her food tray to the housing unit microwave and heats it to the maximum, attempting to kill bacteria.

28.     **Giovanna Ramirez-Hernandez** is a pretrial detainee and has been in custody since October 15, 2024. She remembers herself as energetic and active before incarceration. Before incarceration she was thin: weighing 115 pounds. Now she has no motivation to move and has gained 25 pounds. There's no place to exercise, and she is tired all day. She has frequent digestive issues. She frequently has diarrhea and indigestion. In addition, she has developed breathing problems. The medical staff diagnosed the issue as allergies, which she did not have prior to incarceration.  She is provided triamcinolone acetonide nasal spray. She has to take a pharmaceutical medication to sleep. Even so, she has difficulty falling asleep and staying asleep, waking up twice most nights. She is dozy and sleepy during the day and has low energy. She has constant headaches, at least four to five times a week. The headaches last three to four hours. Since coming to jail she is now nearsighted and needs glasses.

29.     **Marilyn Sahagun** has been in custody since July 18, 2023. Her digestive system constantly causes her pain. It doesn't matter if she eats or doesn't eat. She has regular migraine headaches that lasts a couple of hours. On a scale of 1 to 10, her headaches are an 8/9. The plumbing is horrible. The toilets do not flush well. The showers are insufficient. Sometimes there is hot water for a minute or two, and then it shuts off, so there is only a cold shower. The water sometimes just dribbles out. The jail is full of insects, lice from new books, cockroaches, and other

9

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

bugs. She has developed a variety of skin issues, from fatty lipomas, to other skin issues for which she has not received medical attention.

30.    **Kimberly Boyd** is a pretrial detainee and was incarcerated on October 13, 2024. Since incarceration she has gained 60 pounds. Digesting food gives her pain. She has difficulty falling asleep and staying asleep. She is prescribed melatonin. She is frequently sleepy throughout the day and has trouble keeping her energy levels up. She has regular low grad headaches for which she is given Tylenol and Ibuprofen. Her anxiety has gotten worse since incarceration. She had pre-existing high blood pressure, which is worsened. She now takes prescription medication for her anxiety and metformin for her high blood pressure. She has blood sugar issues, and the jail food causes her to be sick. In Mid-March she suffered severe vomiting, diarrhea from the food, which lasted weeks.

31.    **Kaitlyn Williams** was incarcerated in November, 2025. Since incarceration she has suffered sleep disruption, waking up almost every night, and then has a difficult time falling back asleep.  She has regularly developed headaches. In the seven (7) months she has been incarcerated, she asked once to go to the gym and was denied.  In the seven (7) months she has been incarcerated, she has never been given access to the gym. She has become listless.

**Defendants**

32.    Defendant **City and County of San Francisco** is both a city and a county located in the State of California. City and County of San Francisco is a "public entity," pursuant to California Government Code § 811.2.

33.    Defendant **City and County of San Francisco Sheriff's Office** (hereinafter "**Sheriff's Office**") is a law enforcement agency within  the City and County of San Francisco and, relevant here, is charged with operating all City and County of San Francisco jails ("**SF Jails**"), including County Jail 2 located in the City, and County Jail 3 and County 3 Annex which are located in San

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

Bruno. Defendant Sheriff's Office is a "public entity" as defined by California Government Code § 811.2.

34.    Defendant **Paul Miyamoto** (hereinafter **"Miyamoto"**) is, and at all times relevant to this Complaint was, a law enforcement officer and the elected Sheriff of San Francisco City and County, acting under color of state law and within the scope of his employment. As the elected Sheriff of San Francisco County, Defendant Miyamoto holds the command and policy making position with regard to SF Jails, including CJ2, and is responsible for overseeing all San Francisco County detention facilities run by the San Francisco Sheriff's Office.  Defendant Miyamoto has caused, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the unconstitutional and inhumane conditions, actions, policies, customs and practices that prevail at the SF Jails, as described fully below. There is a direct causal link between the affirmative acts and omissions of Defendant Miyamoto, as the chief supervisory member of the Sheriff's Office and the injuries and violations of rights set forth fully below. Defendant Miyamoto has, wholly or in part, directly and proximately caused and will, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, continue in the future to proximately cause the injuries and violations of rights set forth fully below and is sued in his individual capacity.

35.    Defendant **Jennifer Collins** (hereinafter **"Collins"**) is and at all times relevant to this Complaint was, a law enforcement officer and the Chief of Custody in charge of the Custody Operations for the Sheriff's Office, acting under color of state law and within the scope of employment. As the ranking officer in charge of the Custody Operations, she is the direct commander and policy maker position with regard to all of the County Jails operated by the Sheriff's Office, including County Jails 2. Defendant Collins has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the unconstitutional and inhumane

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

conditions, actions, policies, customs and practices that prevail at the Jails, as described fully below. There is a direct causal link between the affirmative acts and omissions of Defendant Collins, as the chief supervisory member of the Custody Division of the San Francisco Sheriff's Office and the injuries and violations of rights set forth fully below. Defendant Collins has, wholly or in part, directly and proximately caused and will, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, continue in the future to proximately cause the injuries and violations of rights set forth fully below and is sued in her individual capacity.

36.    Defendant **Lisa Pratt**, (hereinafter **"Pratt"**) is a medical doctor and is and was, at all times material herein, the Director of Jail Health Services, for the San Francisco Sheriff's Office, acting under color of state law and within the scope of employment. Jail Health Services is the division that has the responsibility to provide direct medical care and does the direct medical care for all inmates in the custody of and under the control of the San Francisco Sheriff's Office operated jails. Defendant Pratt, is sued in her individual capacity.

37.    Defendant **Roland Pickens**, (hereinafter "**Pickens**") is the Chief Executive Administrator for the San Francisco Health, which oversees Jail Health Services.  As the CEO he is responsible for the provision of medical care to inmates in San Francisco jails.  Defendant PICKENS is sued in his official capacity only.

38.    Each and every Defendant named herein was at all times relevant to this Complaint an officer or employee of the San Francisco County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of the Sheriff and within the scope of their employment with the Sheriff.

39.    Each and every individual Defendant was a command officer who had within his or her own powers, to choose action or inaction, and had the power and authority for the training,

12

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

supervision and control of his or her subordinates in the manner in which Plaintiffs and members of the Plaintiff class were held in custody. Every individual Defendant's action or inaction were a primary or significant causal factor in the constitutional deprivations alleged herein, and the injuries and harms complained of. Each individual Defendant had the power to effectuate the necessary change to prevent the constitutional deprivations and injuries and harms complained of but failed and refused to do so. The actions or inactions of these individual, supervisory defendants set in motion a series of acts by others, including his or her subordinates, which the individual supervisors knew or reasonably should have known would cause others to inflict the constitutional injuries complained of herein. The actions or inactions each individual Defendant took, were demonstrations of reckless or callous indifference to the rights of Plaintiffs and members of the Plaintiff class.

40.    Does 1 through 50 are supervisory staff who staff the Jails and all of whom contributed to the injuries, deprivations and losses complained of herein. The Doe defendants are sued in their individual capacities.

## GENERAL ALLEGATIONS

41.    At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

42.    The City and County of San Francisco operates active jails, incarcerating primarily pretrial detainees. County Jail 2 ("**CJ2**"), located at 425 7th Street, within the City limits, is a Level 2 facility defined by Title 24 as "a local detention facility used for the detention of persons pending arraignment, during trial and upon a sentence of commitment." Cal. Code Regs. §24, p. 4.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

43.    CJ2 is designed to hold between 325 and 392  primarily pretrial inmates, and is the only jail operated by the San Francisco Sheriff's Office that houses women. At present there are approximately 79 women incarcerated in CJ2.



44.    CJ2 was built in 1994, and was designed and built, in violation of the 1994 Code and now current: Title 24, California Uniform Building Code, and the San Francisco Building Code.

**Lack of Sunlight**

45.    The Level 2 jail at 425 7th Street was deliberately designed and constructed with no outdoor access and no exposure to direct sunlight. As a result, inmates housed at CJ2 have never had outdoor recreation and cannot have direct sunlight on their skin, eyes, or bodies while in the custody of the San Francisco Sheriff's Office. Inmates are housed 24 hours  day under artificial light.  Even during nighttime hours, lights remain on.

46.    Some sleeping areas contain a window approximately the width of one hand; however, this window is recessed approximately ten feet behind the exterior wall, with a maintenance hallway

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

and building pipes obstructing any view or light. Many of these windows face north, and most receive no direct sunlight. Some are entirely obscured. All inmates are subjected to a total deprivation of outdoor sunlight and outdoor fresh

47.     These conditions violate California Code of Regulations, title 15, section 1065, and inmates' rights under the Eighth and Fourteenth Amendments. Sunlight deprivation initially produces chronic jet lag — manifesting as sleep disruption, daytime fatigue, impaired concentration, digestive disturbance, mood changes, and a general sense of unwellness. Over time, these symptoms progress into chronic and potentially irreversible illness, including memory loss, dementia, insomnia, diabetes, endocrine and metabolic disorders, Crohn's disease, immune dysregulation, migraines, hypertension, depression, and impaired eyesight.

48.     CJ3 is a county jail operated by the San Francisco Sheriff's Office located on San Francisco owned watershed land in San Bruno. There are two buildings at San Bruno used to incarcerate prisoners. **"CJ3 Main"** opened in 2006, and has a capacity of 768 inmates, only men. The **"CJ3 Annex"** is located on the same property, has a capacity of 372, again only men.

49.     The CJ3 Annex has an outdoor space attached to the housing units, so that the male inmates housed in the CJ3 Annex can have access to direct sunlight.



**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

50.     Some of the inmates in CJ3 Main are provided access to direct sunlight, as a result of a prior litigation, *Brackens, et al. v. City and County of San Francisco, et al*. 3:19-cv-02724-SK (CAND) [July 2, 2024], "**Brackens**", wherein the trial court found "that Defendant violated Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution and Article I Section 7 of the California Constitution by failing to provide any access to direct sunlight, defined as access to sunlight without any mediation through glass or plastic or other solid substance that blocks ultraviolet light, and thus orders the injunctive relief noted above." (Dkt. 478 at p. 67) The San Francisco Sheriff's Office was ordered to provide at least 15 minutes of direct daily sunlight to all prisoners who had been incarcerated for 1 year or longer. (Dkt.478 at p. 62)

51.     Defendants Miyamoto and Pratt are both knowledgeable about the *Brackens* litigation, as both were witnesses at trial. Plaintiffs' expert witness, Dr. Charles Czeisler, testified that humans require direct sunlight in order to maintain a regular circadian rhythm and to maintain proper functioning of human endocrine, cardiopulmonary, and neurological systems.

52.     Many inmates at CJ2 have been incarcerated pre-trial, for over a year, some for many years.

53.     Male inmates at CJ2 who raise concerns about sunlight deprivation may request transfer to CJ3. Women inmates have no such option: CJ2 is the only San Francisco County jail that houses women.

54.     Transfer to CJ3 provides limited relief even for men. Outdoor space at CJ3 is small and access is restricted, and transferring CJ2 inmates displaces CJ3 inmates from their own limited sunlight access. As a result, transfers for the purpose of sunlight exposure rarely occur.

55.     The most effective remedy for sunlight-deprivation illness is direct sunlight – on the skin and through the eyes. Defendants have not provided it. Instead, they dispense pharmaceuticals –

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

psychotropic medications, sleep aids, cortisone cream, and vitamin D supplements – that marginally mitigate symptoms while leaving the underlying cause unaddressed. These interventions do not prevent or reverse the chronic illness caused by sunlight deprivation; but they allow Defendants to sustain the unconstitutional and cruel and unusual confinement conditions that result in chronic illness. Defendants' medical care merely maintain the status quo in Defendants' deliberate indifference in creating inmates chronic illnesses by denying inmates access to direct sunlight.

56. Defendants' pharmaceutical interventions carry independent iatrogenic risks. Psychotropic drugs alter perception, risk assessment, and judgment, with chronic reliance reshaping brain architecture.

57. The use of pharmaceuticals - including psychotropic medication - as the sole means by which inmates are made to tolerate the harmful conditions at CJ2 constitutes chemical coercion. Upon release, inmates who have been subjected to long-term pharmaceutical regimens suffer diminished cognitive clarity and problem-solving ability, compounded by the physical sequelae of the medications themselves: liver toxicity, cardiovascular effects, hormonal disruption, and gut microbiome damage. These harms compound the underlying chronic illnesses caused by sunlight deprivation. Together, they impair reintegration into non-carceral life and increase the likelihood of re-offense.

58. Defendants' deliberate failure to provide sunlight access deprives all CJ2 inmates of their constitutional rights. It falls with particular force on women inmates, who, unlike their male counterparts, have no mechanism within the San Francisco County jail system to ever obtain sunlight exposure.

59. Defendants have long possessed specific knowledge that total sunlight deprivation causes chronic and irreversible human illness - including insomnia, myopia, diabetes, metabolic

17

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

syndrome, hypertension, cardiac disease, digestive disease, memory loss, possible dementia, and exacerbation of eczema – and have, through deliberate indifference – taken no action to provide CJ2 inmates

60.    Defendants have maintained a deliberate policy of palliative pharmaceutical care that addresses symptoms, ignores causes, and creates lifelong drug dependency – all while preserving the conditions that generate the harm in the first place.

**Insufficient Space and Opportunity To Exercise**

61.    Title 24 California Code of Regulations governs the physical facilities of county jails. 24 CCR §13-102 defines exercise as "activity that requires physical exertion of the large muscle group."

62.    24 CCR §1231.2.10 requires that every jail, including CJ2 provide at least one exercise area of not less than 600 square feet, with a minimum number of square feet to be "computed by multiplying 80 percent of maximum rated population by 50 square feet (4.7 m2) and dividing the result by the number of one-hour exercise periods per day."

63.    15 California Code of Regulations §1000 et seq establishes minimum standards for county jails. Section. Section 1006 defines exercise as the "opportunity for physical exertion"; defines "Out of cell time" to mean, an opportunity outside of the sleeping area with an opportunity to exercise or participate in recreation.; and "Recreation" as "the individual's ability to choose from activities that occupy the attention and offer the opportunity for relaxation and may include reading, games, socialization, entertainment, education, and programs."

64.    15 CCR §1065 requires that every inmate be provided with the of minimum opportunity of three hours per seven days for exercise in a place of sufficient size for large muscle physical exertion.  CJ2 has neither sufficient space to meet the requirements of 24 CCF §1231.2.10, nor do

18

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

Defendants comply with 15 CCR §1065, by providing inmates with the opportunity to exercise three (3) hours per seven days.

65.    As a direct result of the inadequate exercise space and the lack of meaningful opportunity to exercise within the facility, inmates at CJ2 - particularly female inmates - have uniformly experienced significant weight gain. This weight gain has negatively impacted inmates' health included the development of metabolic syndrome, potential heart disease, hypertension, diabetes, and elevates the women's risk of developing cancers including cancer of the liming of the uterus, gallbladder cancer, and breast cancer.

66.    Inmates' right to exercise, and right to access outdoor recreation is a clearly established. Defendants' deliberate deprivation of plaintiffs and class members of exercise space and access outdoor access violates plaintiffs' and class members' liberty interest protected by due process.

67.    Prior to March 2026, all women inmates were housed in one pod, with over-crowded sleeping areas, and were uniformly denied total access to programming that were provided to male inmates.

68.    Women inmates are denied access to inmate jobs that are available to male inmates.

69.    Women inmates have been and continue to be, provided less access than male inmates to the gym and to opportunities for recreation and exercise.

**Poor Quality, Unhealthy, and Inedible Food**

70.    Defendants City and County of San Francisco and the San Francisco Sheriff's Office control all food available to inmates in CJ2; and yet fail to provide the necessary and appropriate nutrition and menus for the prevention and management of the chronic illnesses inmates develop as a result of the total deprivation of sunlight - including hypertension, blood sugar irregularities and diabetes. This nutritional aggravates and compounds those chronic illnesses in many cases

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

rendering them irreversible and requiring ever-increasing reliance on pharmaceuticals for management.

71.    The jail food served is high in starch and lacking in fresh fruits and vegetables. Combined with the disruption to their endocrine system from the deprivation of sunlight, a majority of the inmates have gained significant weight since incarceration. Inmates, who prior to custody, could maintain control over their blood sugar and diabetes through food and exercise, can no longer do so, and have become insulin dependent.

72.    Defendants contract with a for-profit corporation, Aramark, Inc., to procure and prepare the food. Aramark fails to ensure that the trays are properly cleaned. The used trays are picked up from the housing units with dry food residue still adhered to then, nominally rinsed before being run through a rapid-cycle dishwasher, a process insufficient to remove leftover food or soap residue. Food is then served on these inadequately cleaned trays, exposing inmates to old food debris and soap contamination.   As a result, inmates develop stomach ailments.

73.    Plaintiff Ramirez says she routinely avoids eating jail food and is compelled to purchase commissary because eating jail food causes her stomach illness.

74.    Inmates are unable to access healthy and nutritious foods to manage chronic illnesses including diabetes, hypertension and other endocrine and metabolic illnesses.

75.    Long-term inmates report that stomach illness from the food is a common and recurring problem at CJ2. The issue stems from food being improperly cooked to insufficient temperatures in the kitchen, compounded by inadequately sanitized food trays.  Long term inmates state that they are forced to take their plastic trays and wait for access to the unit microwave, and heat them to the maximum temperature. Those denied microwave access face a stark choice: eat food that frequently causes gastroenteritis and other gastrointestinal distress, or go hungry.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

**LISA PRATT**

76.    Defendant Lisa Pratt is a board certified medical doctor who  is aware that exercise and diet are fundamental components of managing both pre-diabetes and diabetes, often rivaling medication in their therapeutic effectiveness.  In pre-diabetes, dietary intervention – including reducing refined carbohydrates and sugars, emphasizing fiber-rich vegetables, legumes, and whole grains, and controlling portion sizes – can directly lower blood glucose and insulin resistance, in many cases reversing the condition before it progresses to insulin dependent diabetes. Regular physical activity, particularly a combination of aerobic exercise and resistance training, increases insulin sensitivity by driving glucose into muscle cells independently of insulin, lowering blood sugar both immediately after exercise and over the long term.

77.    Defendant Pratt is aware that for those with established diabetes, exercise and diet help stabilize glycemic control, reduce dependence on medication, and lower the risk of serious complications including cardiovascular disease, neuropathy, and kidney damage. The two interventions - diet and exercise - work synergistically.  A well-structured diet reduces the glycemic load the body must manage, while exercise improves the body's capacity to manage it – making their combined practice more powerful than either alone.   Together, exercise and diet are primary therapeutic tools that address the underlying metabolic dysfunction rather than merely managing its symptoms.

78.    Despite this knowledge, Defendant Pratt provided only pharmaceutical treatments in order to enable inmates to tolerate these illness causing conditions.  She failed to employ effective therapeutic tools to address the root causes of the illness, thereby causing inmates to develop chronic illnesses, illnesses with more severity and complications, which led to these chronic illnesses becoming irreversible.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

79. Defendant Pratt trained the Prison Health staff to offer only palliative care or symptomatic care, with full knowledge that such an approach would result in chronic, irreversible illness. Defendant Pratt never raised the need for inmates to have access to direct sunlight as a basic requirement of health, took no steps to secure such access, and never advocated for it. She similarly failed to seek greater exercise opportunities for her patients, and made no effort to secure healthier or more nutritious food on their behalf.

**Inadequate Building Maintenance and Sanitation**

80. Defendants are responsible for maintenance of CJ2, including:

   a) 15 CCR 1231.3.4 requires defendants to provide one shower for every 20 inmates, and each shower must have either hot and cold water, or tempered water.

   b) 15 CCR 1266 mandates that every inmate shall be provided access to a shower upon assignment to a housing unit, and thereafter "at least" every other day."

   c) Defendant City and County of San Francisco and the San Francisco Sheriff's Office are required by 24 CCF 1280 with maintaining CJ2 in an acceptable level of cleanliness, repair and safety.

81. Defendants have failed to properly maintain the building and on information and belief plaintiffs allege that beginning in 2021 there has been a consistent lack of sufficient hot water for inmate showers.

82. Defendants City and County of San Francisco, the Sheriff's Office, Miyamoto, and Collins have failed to properly maintain the building so that there is a constant and chronic state of insect infestation in the inmates' living quarters, so that the walls are crumbling and emit dust and

22

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

particulate matter into the air, so that there are regular water intrusions for mold and bacteria, and the plumbing regularly backs up.

83.    As a result of Defendants' neglect, inmates and class members experience an increase in breathing disorders including asthma, skin disorders, and other health impairments.

84.    As a result of Defendants' neglect, inmates and class members, suffer toilet overflows or toilets are inoperable or frequently back up, and women in the dormitory settings are denied access to toilets, while those incarcerated in cells are ordered not to flush toilets, are forced to live with urine and feces in their cells as the toilets do not have lids, and sleep within two feet of toilets filled with feces and urine.

85.    Defendants fail and have failed to provide appropriate supervision; and screening, frequently moving newly booked female inmates, many of whom are homeless and who lacked access to personal sanitation and showers prior to their arrest. These newly booked inmates are directly moved from in-take into the housing unit with existing women inmates, causing the transmission of lice and scabies to the women inmates who are already housed in CJ2.

86.    Sheriff deputies are poorly trained, broadcast incidents of lice and scabies, bring shame, ridicule, ostracism, harassment and sometimes even causing physical violence on women inmates who contract lice and scabies.

87.    Due to the lack of maintenance, insects have found purchase inside CJ2.

88.    Defendants fail to provide adequate medical care to newly booked female inmates, many of whom have substance abuse issues, and upon incarceration are forced to undergo withdrawal. Withdrawal from substances often entails loss of control of body fluids and secretions including loss of bowel control and vomiting. Because Defendants fail to provide adequate medical care and maintain no in-custody medical pods for women, female inmates are forced to care for newly

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

booked inmates undergoing substance withdrawal — including cleaning up human biological waste such as vomit and excrement — in a facility that lacks reliable hot water and suffers regular plumbing and sewer failures that render toilets unavailable to the very inmates who are ill.

**FEMALE INMATES**

89.     One of the perks provided inmates is an inmate job because boredom and monotony are the major experiences of jail life. Inmate workers are permitted greater freedoms, and privileges. Inmate workers have tasks to occupy them.  Female inmates in CJ2 are much more restricted on the inmate jobs available to them as compared to the male inmates.  Female inmates have less frequent access to the gym compared to male inmates.  Female inmates have less access to programs compared to male inmates.

**SHERIFF MIYAMOTO**

90.     As the Chief Executive for the San Francisco Sheriff's Office, Defendant Miyamoto knew, is very familiar with the CJ2 facility, that there is no outdoor access for inmates,  that inmates are never provided direct access to sunlight, that the gym space is too small and does not meet the minimum requirements of California Regulations.  As the Chief Executive, he is also personally familiar with the CJ3 and CJ3 Annex facility.

91.     Defendant Miyamoto knows  that inmates in CJ2 spent years in custody as pretrial detainees.

92.     As the Chief Executive for the San Francisco Sheriff's Office, Defendant Miyamoto knew, as a result of *Brackens, et al. v. City and County of San Francisco, et al.* that deprivation of sunlight can cause chronic illnesses health.  Yet,  defendant Miyamoto took no action to make sunlight available for inmates at CJ2.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

93.    Defendant Miyamoto admitted under sworn testimony that being outside is good for inmates. He knew and understood the expert testimony in Brackens, et al. v. City and County of San Francisco, et al.  that sunlight on the skin is necessary to human health. Yet, he took minimal actions to provide outdoor access to inmates. even when required to do so, at CJ3.   His directions at CJ3 were to provide small, cramped dog kennels for inmates to stand in, without verification or the effort to insure that when inmates were in the dog kennels, that they would be able to access sunlight; rather than having the dog kennels shadowed by the jail building.

94.    Defendant Miyamoto has been deliberately indifferent to the injuries being imposed and suffered by the inmates of CJ2.

**JENNIFER COLLINS**

95.    Defendant Collins is a twenty-six year employee of the San Francisco Sheriff's Office, and is very familiar with the custody operations.  She is currently the head of the Custody Operations Division and is the Commander of CJ2.  Previously she had been assigned to CJ3 and is therefore familiar with the environs of CJ3 and the requirements of the court order in the Brackens litigation. Defendant Collins is also knowledgeable with the CJ2 facility, that there is no outdoor access for inmates,  the gym space is too small and does not meet the minimum requirements of California Regulations, the state of the food, the contract with Aramark, the dilapidated condition of the building, and the fact that there are increasing incidents of chronic illness amongst the inmates. Defendant Collins is aware of that the inadequate medical care is pharmaceutically based in order to enable inmates to tolerate these illness causing conditions.

96.    Defendant Collins has been deliberately indifferent to the deficiencies of the CJ2 physical plant and the harm inflicted on the inmates housed in CJ2.  Defendant Collins has been

25

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

deliberately indifferent to the injuries to inmates resulting from the deficiencies of the food served and the inadequacies of the medical care.

## CLASS ACTION ALLEGATIONS

**CJ2 Inmate Class**

97.    All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all adult men and women who are now, or will be in the future, incarcerated in the San Francisco County Jail 2. ("CJ2 Inmate Class").

**Numerosity: Fed. R. Civ. P. § 23(a)(1)**

98.    The CJ2 Inmate Class is sufficiently numerous that joinder of all members of the class is impracticable and unfeasible. Currently, Defendant City and County of San Francisco reports a total of 1249 individuals in its jails. CJ2 has a maximum capacity of 392 inmates, and based upon defendants' reporting, CJ2 has between 325 and 392 inmates in the last 180 days.[1]

99.    The CJ2 Inmate Class members are identifiable using records maintained in the ordinary course of business by Defendants.

**Commonality: Fed. R. Civ. P. 23(a)(2)**

100.    There are multiple questions of law and fact common to the CJ2 Inmate Class including, but not limited to:

101.    Whether Defendants' use of a physical facility that is not in compliance with California Building Code, and denies all class members access to sunlight, so that class members develop chronic illnesses, or or are forced to exist with chronic jet lag syndrome, or see their illnesses become more severe and serious, violates the Due Process Clause of the Fourteenth Amendment

---

[1] Defendant only reports on total incarceration. Defendants' reporting of its incarceration numbers fluctuates with the numbers it claims as its capacity in CJ3, and the CJ3 annex.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California constitution.

102. Whether Defendants' use of a physical facility that is not in compliance with California Building Code, and denies all class members adequate access to exercise, and violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California constitution.

103. Whether Defendants failure to maintain adequate and necessary repairs including to the hot water system, violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California constitution.

104. Whether Defendants have been deliberately indifferent to the CJ2 Inmate Class members' due to CJ2 Inmate Class members' risk of injury and harm from the denial of sunlight.

105. Whether Defendants have been deliberately indifferent to the CJ2 Inmate Class members' risk of injury and harm from insufficient access to exercise.

106. Whether Defendants have been deliberately indifferent to the CJ2 Inmate Class members' risk of injury and harm from insufficient hot water.

107. Whether Defendants have been deliberately indifferent to the CJ2 Inmate Class members due to the insect infestations;

108. Whether Defendants' failure to provide minimally adequate medical care to prisoners for their injuries resulting from the lack of sunlight violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution.

27

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

109. Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

### Typicality: Fed R. Civ. Po. 23(a)(3)

110. The claims of the named Plaintiffs are typical of the claims of the members of the proposed class as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the CJ2 Inmate Class claims.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

111. Plaintiffs will fairly and adequately represent and protect the interests of the putative CJ2 Inmate Class members and diligently service as Class Representatives. Plaintiffs' interests are co-extensive with those of the CJ2 Inmate Class and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other class members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the CJ2 Inmate Class.

### Fed. R. Civ. P. 23(b)

112. This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants' policies, practices, actions, and omissions that form the basis of the claims of the CJ2 Inmate Class are common to and apply generally to all members of the CJ2 Inmate Class. All of the Jails' policies are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the CJ2 Inmate Class.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

**CJ2 Women Subclass**

113.    All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a), and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a subclass of all women inmates incarcerated at CJ2.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

114.    The CJ2 Women's Subclass is sufficiently numerous that joinder of all members of the subclass is impracticable and unfeasible. Currently there are 79 members of the CJ2 Women's Subclass.

115.    The Disability Subclass members are identifiable using records maintained in the ordinary course of business by Defendants.

**Commonality: Fed. R. Civ. P. 23(a)(2)**

116.    There are questions of law and fact common to the CJ2 Women's Subclass, including, but not limited to:

    a)    Whether Defendants' provided women inmates at CJ2 with fewer privileges, including fewer access to jail jobs; fewer opportunities to exercise; less access to programming; and subjected women inmates at CJ2 to greater over-crowding, and most importantly, while male inmates had the possibility and were in fact provided some sunlight at CJ2, women inmates were not and could not be provided any direct sunlight; whether this conduct by Defendants was and continues to be discrimination in violation of the Fourteenth Amendment for Equal Protection and Due Process.

    b)    Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

**Typicality: Fed R. Civ. Po. 23(a)(3)**

117.    The claims of the named Plaintiffs are typical of the claims of the members of the proposed sub-class as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the CJ2 Women' subclass claims. All of the named plaintiffs are in fact women inmates at CJ2.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

118.    Named Plaintiffs will fairly and adequately represent and protect the interests of the putative CJ2 Women's Subclass members and diligently service as representatives of the proposed subclass. Plaintiffs' interests are co-extensive with those of the subclass and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other subclass members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the CJ2 Women's Subclass.

**Fed. R. Civ. P. 23(b)(2)**

119.    This action is also maintainable as a class action pursuant to Fed. R. Civ. Proc. §23(b)(2) because Defendants' policies, practices, actions, and omissions that form the basis of the claims of the CJ2 Women's Subclass are common to and apply generally to all members of the proposed subclass. All of the Jails' policies regarding prisoners who are female are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Disability Subclass.

**CJ2 Damages Subclass**

120.    All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a subclass of all inmates incarcerated at CJ2.

30

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

121.    The CJ2 Damages Subclass is sufficiently numerous that joinder of all members of the subclass is impracticable and unfeasible. On a daily basis, the incarcerated population at CJ2 range from 325 to 396. However, inmates cycle in and out of CJ2, some being released as new inmates are taken into custody. Therefore, the number of the members of the CJ2 Damages Subclass is fluid and substantially greater in the aggregate than the custody limits for CJ2.

122.    The CJ2 Damages Subclass members are identifiable using records maintained in the ordinary course of business by Defendants.

**Commonality: Fed. R. Civ. P. 23(a)(2)**

123.    The CJ2 Damages Subclass presents common questions of law and fact, including the nature and extent of damages suffered by each subclass member for each day of incarceration during which insufficient hot water prevented access to a minimum a warm or tempered shower. The deprivation of adequate shower facilities constitutes a uniform and ascertainable experience shared by all members of the CJ2 Damages Subclass and is therefore capable of common proof and quantification.

124.    The fact that Defendants, knowing that denial of sunlight caused chronic illness, the only medical care provided for inmates suffering from this condition was and is Vitamin D supplementation which is completely ineffective for either the symptoms or the underlying cause.

125.    The fact that Defendants know that denial of sunlight on the skin causes chronic, irreversible injuries, and only prescribe pharmaceutical palliative care to enable inmates to endure these harmful conditions while providing no genuine medical care to prevent the development of chronic illnesses that inevitably arise.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

126. That the deferred maintenance has caused unsanitary conditions and bugs to proliferate in inmate cells and housing units.

### Typicality: Fed R. Civ. P. 23(a)(3)

127. The claims of the named Plaintiffs are typical of the claims of the members of the CJ2 Damages Subclass as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the CJ2 Damages subclass claims.

128. Named Plaintiffs will fairly and adequately represent and protect the interests of the CJ2 Damages Subclass members and diligently service as representatives of the subclass. Plaintiffs' interests are co-extensive with those of the subclass and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other subclass members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the CJ2 Damages Subclass.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

129. Named Plaintiffs will fairly and adequately represent and protect the interests of the putative CJ2 Damages Subclass members and diligently service as representatives of the proposed subclass. Plaintiffs' interests are co-extensive with those of the subclass and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other subclass members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the CJ2 Damages Subclass.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

## FIRST CAUSE OF ACTION FOR RELIEF

### Eighth Amendment - Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983
### (All Plaintiffs and CJ2 Inmate Class Against All Defendants)

130.    Plaintiffs re-allege and incorporate by reference herein all allegations made in this Complaint.

131.    By their policies and practices described above, Defendants and each of them subjected and continue to subject Plaintiffs and the CJ2 Inmate Class they represent, to a substantial risk of serious harm and injury from the harmful and inhumane effects of their housing decisions to subject all inmates at CJ2 to total denial of sunlight, no natural air, no outdoor exercise and recreation, insufficient exercise space, and limited access to exercise, lack of hot water, and sewage backups and overflows, insect infestations, and food insufficient to maintain health. Defendants further subject Plaintiffs and the CJ2 Inmate Class to a substantial risk of serious harm and injury by providing inadequate medical care that relies on psychotropic drugs and pharmaceutical drugs to chemically coerce inmates to tolerate conditions that cause ill health. This creates chemical dependence with its own attendant health risks and iatrogenic effects. This is especially damaging in a population cohort that already suffers from drug dependency issues. These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and the CJ2 Inmate Class's ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

132.    By their policies and practices described above, Defendants subject Plaintiffs and the CJ2 Inmate Class they represent, to a substantial risk of serious harm from the provision of inadequate and inhumane living conditions, insufficient access to exercise, lack of sufficient healthy

33

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

food to maintain health, and lack of appropriate and necessary medical care. These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and the CJ2 Inmate Class's ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

133.    The policies, practices and customs described above are the official policies, practices and customs of Defendants and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Eighth Amendment. The policies, practices and customs described above include Defendants and each of their  failure to train its staff in the face of an obvious need for training to prevent the violations described above.

134.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

## SECOND CAUSE OF ACTION FOR RELIEF

**Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 (Due Process)**
**(All Plaintiffs and the CJ2 Inmate Class Against All Defendants)**

135.    Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

136.    By their policies and practices described above, Defendants and each of them subjected and continue to subject Plaintiffs and the CJ2 Inmate Class they represent, to a substantial risk of harm due to the denial of due process in relation to the conditions of confinement from being incarcerated in a jail that violates basic California building code that has no space for direct sunlight for inmates and inadequate space for exercise; due to defendants' conduct of  pharmaceutical coercion in order to force inmates to tolerate these unhealthy and unnatural, and code violating

34

CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

conditions; due to conditions without adequate sanitation and plumbing;  imposes an atypical, substantial, and different hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process.. These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the CJ2 Inmate Class's ongoing deprivation of rights secured by the United States Constitution under the Fourteenth Amendment.

137.    The policies, practices and customs described above are the official policies, practices and customs of Defendants and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Fourteenth Amendment. The policies, practices and customs described above include Defendants' failure to train its staff in the face of an obvious need for training to prevent the violations described above.

138.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

**THIRD CAUSE OF ACTION**

**Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 (Equal Protection) (CJ2 Women Subclass Against All Defendants)**

139.    Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

140.    By their policies and practices described above, Defendants City and County of San Francisco, San Francisco Sheriff's Office, Miyamoto and Collins, subject Plaintiffs and the CJ2 Women Sub-Class they represent, to a substantial risk of harm due to the denial of due process in relationship to housing decisions, access to programming decisions, inmate job decisions, access to

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

recreation and opportunities to exercise and the complete lack of available sunlight because women inmates have fewer privileges and rights than men. Women prisoners are denied certain jail jobs which afford privileges and greater freedoms. Women prisoners were and are denied access to programming and fewer jail jobs. Women prisoners were forced to house in overcrowded sleeping areas. Women prisoners are afforded even less access to recreation and exercise than the male prisoners. And while access to sunlight for male prisoners is highly limited, some male prisoners are provided access to sunlight, while no women prisoner has access to sunlight. These conditions create a liberty interest protected by due process.

141.    These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the CJ2 Women Sub-Class's ongoing deprivation of rights under the 14th Amendment of the United States Constitution.

142.    The policies, practices and customs described above are the official policies, practices and customs of Defendants City and County of San Francisco, San Francisco Sheriff's Office, Miyamoto and Collins, and are the direct and proximate cause of Plaintiffs and the CJ2 Women Sub-Class being subjected to known risks of serious harms in violation of the Fourteenth Amendment. The policies, practices and customs described above include Defendants  City and County of San Francisco, San Francisco Sheriff's Office, Miyamoto and Collins' failure to train its staff in the face of an obvious need for training to prevent the violations described above.

143.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

## FOURTH CAUSE OF ACTION

**Article I, Section 7 of the California Constitution**
**(All Plaintiffs and the CJ2 Inmate Class Against All Defendants)**

144.    Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

145.    By their policies and practices described above, Defendants subject the CJ2 Inmate Class by incarceration in a jail that violates basic California building code in that it has no space for direct sunlight for inmates, inadequate space for exercise, and subjugation to a medical system that engages in chemical coercion in order to force inmates to tolerate these unhealthy and unnatural. These policies and practices impose an atypical, substantial, and different hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process.

146.    These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the CJ2 Inmate Class's ongoing deprivation of rights secured by the California Constitution, Article I, Section 7.

147.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

148.    WHEREFORE, Plaintiffs and the CJ2 Inmate Class they represent request relief as outlined below.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

## FIFTH CAUSE OF ACTION

### Article I, Section 17 of the California Constitution
### (All Plaintiffs and the CJ2 Inmate Class Against All Defendants)

149.    Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

150.    By their policies and practices of incarcerating pretrial detainees in a jail that violates basic California building code in that it has no space for direct sunlight for inmates, inadequate space for exercise, and subjugation to a medical system that engages in chemical coercion in order to force inmates to tolerate these unhealthy and unnatural, and code violating conditions, imposes an atypical, substantial, and different hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process.

151.    These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the CJ2 Inmate Class's ongoing deprivation of rights secured by the California Constitution, Article I, Section 17.

152.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

153.    WHEREFORE, Plaintiffs and the CJ2 Inmate Class they represent request relief as outlined below.

## SIXTH CAUSE OF ACTION

### Tom Bane Civil Rights Act
### (Cal. Civ. Code § 52.1)

154.    Plaintiffs re-allege and incorporate by reference herein all allegations made in this Complaint.

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

155. The Sixth Cause of Action is asserted by Plaintiffs and the CJ2 Inmate Class.

**Deliberate Indifference / Special Relationship**

156. *Individual Liability*: Defendants PAUL MIYAMOTO, JENNIFER COLLINS, and LISA PRATT, exhibited deliberate indifference to plaintiffs and class members serious medical needs, including the chronic jet lag, the development of serious chronic illnesses resulting from the continual deprivation of access to sunlight, putting them at substantial risk of suffering serious harm, and did not take reasonable available measures to abate that risk, where a reasonable official in the circumstances would have appreciated the high degree of risk involved, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 7(a) of the California Constitution.

157. Municipal / Supervisory Liability: Defendants CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF'S OFFICE, and ROLAND PICKENS of the San Francisco Health Network/ Jail Health Services maintained policies or customs of action and inaction and knew or should have known that jail staff and Jail Health staff under their command were inadequately trained, supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy, with deliberate indifference or reckless disregard, in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 7(a) of the California Constitution.

158. Vicarious Liability: Defendants CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF'S OFFICE, and ROLAND PICKENS are vicariously liable, through the principles of respondeat superior and pursuant to California Government Code §§ 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of agents, employees, and contractors

39

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

acting within the scope of employment, including Defendants PAUL MIYAMOTO, JENNIFER COLLINS, LISA PRATT,  and DOEs 1 to 20.

159.    Defendants PAUL MIYAMOTO, JENNIFER COLLINS, LISA PRATT, and DOEs 1 to 20's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

160.    Plaintiffs and all class members were and continue to be injured as a direct and proximate result of Defendants CITY AND COUNTY OF SAN FRANCISCO,  SAN FRANCISCO SHERIFF'S OFFICE, ROLAND PICKENS, PAUL MIYAMOTO, JENNIFER COLLINS, LISA PRATT,  and DOE 1 to 20's actions and inactions, entitling Plaintiffs and class members to receive compensatory and treble damages and civil penalties against Defendants CITY AND COUNTY OF SAN FRANCISCO,  SAN FRANCISCO SHERIFF'S OFFICE, ROLAND PICKENS, PAUL MIYAMOTO, JENNIFER COLLINS, LISA PRATT,  and DOEs 1 to 20, and punitive damages against Defendants CITY AND COUNTY OF SAN FRANCISCO,  SAN FRANCISCO SHERIFF'S OFFICE, ROLAND PICKENS, PAUL MIYAMOTO, JENNIFER COLLINS, LISA PRATT,  and DOE 1 to 20.

161.    WHEREFORE, Plaintiffs on behalf of themselves and class members pray for relief as hereunder appears.

## SEVENTH CAUSE OF ACTION

**Negligence**
**(All Plaintiffs and CJ2 Damages Subclass Against All Defendants)**

162.    Plaintiffs re-allege and incorporate by reference herein all allegations made in this Complaint.

163.    The Sixth Cause of Action is asserted by Plaintiffs and the CJ2 Damages Subclass against all Defendants.

40

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

164.   Each Defendant had a legal duty to maintain custody and control of Plaintiffs and the class members they represent, so as to not violate their constitutional rights, including the right to not to be subjected to cruel and unusual punishment, or to have their rights violated so as to raise a due process claim including the right to maintain their health; not be subjected to developing chronic, irreversible illness; direct sunlight; outdoor recreation; exercise; sunlight and sunshine; not be subjected to medical coercion; to live in jails free of vermin; and, to have access to adequate hot water and toilets in order to maintain personal cleanliness and sanitation.

165.   At all relevant times herein, each Defendant failed to exercise the ordinary care or skill in the management of CJ2 by failing or refusing to provide Plaintiffs and the class members they represent with access to the outdoors and sunshine, and forcing members of the sub-class to suffer social and environmental deprivation through confinement in 24 hours of artificial light, deprivation of lack of fresh air, insufficient space and access to exercise, frequent denial of needed sanitation, hot water and working plumbing, inappropriate and inadequate food to maintain health and medical coercion in order to tolerate these conditions.

166.   At all relevant times herein, named Plaintiffs and class members herein have been injured by the regular and daily social and environmental and physical deprivations that was and continues to be caused by Defendants and each of their failure to exercise the ordinary care or skill in the management of the properties and facilities commonly known as CJ2.

167.   At all relevant times herein, named Plaintiffs' and CJ2 Damages Subclass members' injuries were proximately caused by Defendants and each of their failures to exercise ordinary care or skill in the management of the properties and facilities commonly known as CJ2.  These injuries include, but are not limited to, headaches, severe depletion of Vitamin D, increased body pain, headaches, loss of mental acuity, depression, anxiety, and depletion of melanin in their skin.

41

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

## EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

**(Cal. Gov. Code § 820(a))**
**(All Plaintiffs and CJ2 Damages Subclass Against All Defendants)**

168.    Plaintiffs re-allege and incorporate by reference herein all allegations previously made above.

169.    The Seventh Cause of Action is asserted by Plaintiffs and the CJ2 Damages Subclass members against all Defendants.

170.    Defendants' conduct in adopting a policies, customs, and practices of incarcerating inmates where they are completely denied all access to outdoor recreation, to sunshine and sunlight; where inmates have inadequate access to exercise; where some inmates are forced to live, eat and sleep in living quarters infested with vermin, and then subjected to chemical coercion labeled as medical care, is extreme and outrageous conduct that intentionally or recklessly disregards the probability of causing emotional distress.

171.    Defendants and their policies, customs, and practices of incarcerating inmates where they are completely denied all access to outdoor recreation, to outdoor light, sunshine and sunlight; where inmates have inadequate access to exercise; where some inmates are forced to live, eat and sleep in living quarters infested with vermin, and then subjected to chemical coercion labeled as medical care, are the proximate cause of severe and extreme emotional trauma and distress suffered by Plaintiffs and class members.

172.    Defendants and their policies, customs, and practices of incarcerating inmates where they are completely denied all access to outdoor recreation, to outdoor light, sunshine and sunlight; where inmates have inadequate access to exercise; where some inmates are forced to live, eat and sleep in living quarters infested with vermin, and then subjected to chemical coercion labeled as

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.

medical care, exceed all bounds of conduct that is usually tolerated in a civilized community for treatment of persons who are pre-trial, not been convicted, and presumed innocent.

## REQUEST FOR RELIEF

Plaintiffs and the class and subclasses they represent have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the constitutions and laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the constitutions and laws of the United States and the State of California.

WHEREFORE, PLAINTIFFS and all class members pray for judgment and the following relief against DEFENDANTS as follows:

1.    Injunctive relief directing DEFENDANTS, absent exigent circumstances to:

2.    Provide all inmates at CJ2 with access to direct sunlight;

3.     Provide every inmate adequate opportunity and space to exercise regularly;

4.    Provide every inmate who requests, a complete physical examination including test necessary to determine each inmate's level of metabolic functioning, and cognitive functioning;

5.    Provide every inmate who requests it adequate and meaningful medical care and mental health care to address medical issues resulting from the inadequate conditions of confinement maintained by Defendants;

6.    For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief against Defendants CITY AND COUNTY OF SAN FRANCISCO, SAN

43

FRANCISCO SHERIFF'S OFFICE, PAUL MIYAMOTO; JENNIFER COLLINS; LISA PRATT, ROLAND PICKENS, and DOE 1 to 20, pursuant to California Civil Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF'S OFFICE, pursuant to California Civil Code § 818);

7. For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, California Civil Code §§ 52.1, 52 et seq., California Code of Civil Procedure § 1021.5, and any other statute as may be applicable;

8. Award compensatory and punitive damages to Plaintiffs and the CJ2 Damages Subclass;

9. Award declaratory relief according to proof;

10. An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

11. Such other and further relief as the case requires and the Court deems just and proper.

Dated: June 8, 2026                          Respectfully Submitted,


By:    _/s/ Yolanda Huang_
         LAW OFFICE OF YOLANDA HUANG
         Yolanda Huang

         _Attorneys for Plaintiffs_

**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; DAMAGES;**
Carr, et al. v. City and County of San Francisco Sheriff's Office, et al.