DAVID CHIU, State Bar #189542
City Attorney
TARA M. STEELEY, State Bar #231775
Chief Attorney, Government Litigation
EDMUND T. WANG, State Bar #278755
JESSE E. LANIER, State Bar #303395
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone: (415) 554-4783 (Wang)
(415) 554-3915 (Lanier)
Facsimile: (415) 554-4699
E-Mails: edmund.wang@sfcityatty.org
jesse.lanier@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LACARLA CARR, ALEXCIS HERRERA, THEA HOPKINS, SILVIA MONTOYA, DAMENA PAGE, GIOVANNA RAMIREZ-HERNANDEZ, MARILYN SAHAGUN-LOPEZ, KIMBERLY BOYD, and KATELYN WILLIAMS,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF'S OFFICE, SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH, SHERIFF PAUL MIYAMOTO, in his individual capacity; JENNIFER COLLINS, Chief of Custody for the San Francisco Sheriff's Office, in her individual capacity; LISA PRATT, M.D., in her individual capacity as the former Director of Jail Health Services, and ROLAND PICKENS, Chief Administrator for the San Francisco Health Network, in his official capacity,<br><br>Defendants. | Case No. 3:26-cv-05508-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: September 11, 2026<br>Time: 10:00 a.m.<br>Place: Hon. Charles R. Breyer<br>US District Court<br>450 Golden Gate Avenue,<br>Courtroom 6 – 17th Floor<br>San Francisco, California<br><br>Trial Date: None set. |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT AND AUTHORITY .......... 1

- I. NO PLAINTIFF HAS STANDING TO BRING AN EIGHTH AMENDMENT CLAIM. .......... 1
- II. PLAINTIFFS FAIL TO ALLEGE ANY CONDITION OF CONFINEMENT THAT VIOLATES THE FOURTEENTH AMENDMENT. .......... 1
  - A. *Pierce*, not *Brackens*, is Applicable to Plaintiffs' Claim Concerning Outdoor Recreation and Access to Sunlight at CJ2. .......... 1
  - B. Plaintiffs' Allegations Show They Received Adequate Medical Care. .......... 3
  - C. Plaintiffs Fail to Allege Defendants Served Inadequate Food. .......... 3
    - 1. Plaintiffs' Allegations Fail to Establish the Food at CJ2 was Inadequate. .......... 3
    - 2. Defendants Cannot Be Vicariously Liable for Aramark's Food Service. .......... 5
  - D. Plaintiffs Allege Only Temporary Issues With Sanitation and Habilitation. .......... 6
  - E. Plaintiffs Cannot Cobble Together a Fourteenth Amendment Claim From a Combination of Otherwise Constitutional Conditions of Confinement. .......... 7
- III. PLAINTIFFS' EQUAL PROTECTION CLAUSE CLAIM MUST BE DISMISSED. .......... 8
  - A. "Unequal Treatment" Does Not Equate to "Unconstitutional Discrimination." .......... 8
  - B. Male Detainees Are Not Similarly Situated to Female Detainees. .......... 10
- IV. PLAINTIFFS' FAIL TO ALLEGE ANY MUNICIPAL POLICY. .......... 11
- V. PLAINTIFFS FAIL TO ALLEGE WRONGDOING BY ANY INDIVIDUAL DEFENDANT .......... 13
- VI. PLAINTIFFS' STATE LAW CLAIMS FALL WITH THEIR SECTION 1983 CLAIMS. .......... 14
- VII. THE CITY IS IMMUNE TO PLAINTIFFS' TORT CLAIMS. .......... 15

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## Federal Cases

*AE ex. rel. Hernandez v. County of Tulare*
666 F.3d 631 (9th Cir. 2012) ....................12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................1, 5

*Baqleh v. Lake Cnty. Sheriff's Dep't*
2026 WL 880151 (N.D. Cal. Mar. 31, 2026)....................7

*Bd. of Cty. Comm'rs v. Brown*
520 U.S. 397 (1997)....................5

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 ....................1, 5

*Brackens v. City & Cnty. of San Francisco*
2023 WL 6847576 (N.D. Cal. Oct. 17, 2023) ....................1, 2, 14

*Castro v. County of Los Angeles*
833 F.3d 1060 (9th Cir. 2016) ....................12, 13

*City of St. Louis v. Praprotnik*
485 U.S. 112 (1988)....................12

*Craig v. Boren*
429 U.S. 190 (1976)....................9

*Fausia v. Cates*, 2012 WL 781817 (C.D. Cal. Jan. 13, 2012) ....................10

*Fishman v. Williams*
2017 WL 4075136 (C.D. Cal. Sept. 13, 2017) ....................11

*Flemming v. County of Alameda*
2015 WL 846713 (N.D. Cal. Feb. 25, 2015) ....................14

*G.B. by & through G.P. v. United States Env't Prot. Agency*
172 F.4th 1042 (9th Cir. 2026) ....................8, 10

*George v. King*
837 F.2d 705 (5th Cir. 1988) ....................4

*Glauner v. Miller*
184 F.3d 1053 (9th Cir. 1999) ....................8

*Harrison v. Kernan*
971 F.3d 1069 (9th Cir. 2020) ....................11

*Hawkins v. Comparet-Cassani*
251 F.3d 1230 (9th Cir. 2001) ....................1

*Hernandez v. Olmos*
2013 WL 5718566 (E.D. Cal. Oct. 18, 2013)....................6

*Hoptowit v. Ray*
682 F.2d 1237 (9th Cir. 1982) ....................7, 8

*Hydrick v. Hunter*
669 F.3d 937 (9th Cir. 2012) ....................13, 14

*In re Century Aluminum Co. Sec. Litig.*
729 F.3d 1104 (9th Cir. 2013) ....................5

*Jeldness v. Pearce*
30 F.3d 1220 (9th Cir. 1994) ....................8, 9

*Klinger v. Department of Corrections*
31 F.3d 727 (8th Cir. 1994) ....................11

*LeMaire v. Maass*
12 F.3d 1444 (9th Cir. 1993)....................3, 5

*Mitchener v. Curiosity Stream, Inc.*
815 F. Supp. 3d 845 (N.D. Cal. 2025)....................1

*Monell v. Dep't. of Soc. Servs. of City of New York*
436 U.S. 658 (1978)....................5, 11, 12

*Morris v. Jennings*
2014 WL 2700926 (E.D. Cal. June 13, 2014) ....................4

*Norbert v. San Francisco Sheriff's Dep't*
2023 WL 12033253 (N.D. Cal. Apr. 5, 2023) ....................2, 14, 15

*Pembaur v. City of Cincinatti*
475 U.S. 469 (1986)....................12

*Pers. Adm'r of Mass. v. Feeney*
442 U.S. 256 (1979)....................8

*Pierce v. City & Cnty. of San Francisco*
2022 WL 17418974 (N.D. Cal. Dec. 5, 2022)....................1, 2, 14

*Pitts v. Thornburgh*
866 F.2d 1450 (D.C. Cir. 1989)....................9, 10

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*
130 F.3d 432 (9th Cir. 1997) ....................11

*Poslof v. Arce*
2025 WL 786356(N.D. Cal. Mar. 12, 2025)....................3

*Qureshi v. Countrywide Home Loans, Inc.*
2010 WL 841669 (N.D. Cal. Mar. 10, 2010)....................15

*Rasku v. City of Ukiah*
2020 WL 2494563 (N.D. Cal. May 14, 2020)....................12

*Roubideaux v. North Dakota Dep't of Corr. & Rehab.*
570 F.3d 966 (8th Cir. 2009)....................9, 11

*Russell v. Lumitap*
31 F.4th 729 (9th Cir. 2022)....................3

*Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*
974 F.3d 1012 (9th Cir. 2020)....................8

*Sanchez-Martinez v. Freitas*
2023 WL 1070352 (N.D. Cal. Jan. 27, 2023)....................6

*Sand v. Humboldt Cnty. Corr. Facility*
2024 WL 1289694 (N.D. Cal. Mar. 25, 2024)....................3

*Sandin v. Conner*
515 U.S. 472 (1995)....................7

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011)....................13, 14

*Taylor v. List*
880 F.2d 1040 (9th Cir. 1989)....................5

*United States v. Virginia*
518 U.S. 515 (1996)....................9

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*
429 U.S. 252 (1977)....................8

*Walker v. Ahern*
2018 WL 2267745(N.D. Cal. May 17, 2018)....................7

*West v. Atkins*
487 U.S. 42 (1988)....................5

*Wilson v. Seiter*
501 U.S. 294 (1991)....................7, 8

**State Cases**

*Soloman v. San Francisco Cnty. Jail*
2026 WL 1422035 (N.D. Cal. May 20, 2026)....................6

**Constitutional Provisions**

U.S. Const.
Amend. IV ........................................................................................................1
Amend. VIII........................................................................................................1, 2, 7, 8
Amend. XIV........................................................................................................1, 2, 6, 7, 14
Amend. XIV § 1 [Equal Protection Clause] ..........................................................8, 9

**Federal Statutes & Codes**

42 U.S.C. § 1983........................................................................................5, 12, 13, 14

**State Statutes & Codes**

Cal. Civ. Code
§ 52.1 [Bane Civil Rights Act] ........................................................................14

Cal. Code Regs.
Tit. 15, § 1065........................................................................................................2

Cal. Gov. Code
§ 844.6 ..................................................................................................................15
§ 845.6 ..................................................................................................................15

**Rules**

Fed. R. Civ. P. 8(a)(2)..............................................................................................6

## INTRODUCTION

Plaintiffs' complaint sets forth a laundry list of grievances but offer no facts, only conclusory assertions, suggesting their grievances rise to the level of unlawfulness, or have anything to do with any culpable action of any named Defendant. The *facts* alleged in the complaint "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' opposition only highlights their complaint's deficiencies.

## ARGUMENT AND AUTHORITY

### I. NO PLAINTIFF HAS STANDING TO BRING AN EIGHTH AMENDMENT CLAIM.

Plaintiffs do not dispute that the Eighth Amendment does not apply to pretrial detainees. And Plaintiffs do not dispute that none of them have been convicted. But Plaintiffs argue that the inclusion of convicted prisoners in the putative CJ2 inmate class[1] saves their Eighth Amendment claim. Not so. "A named plaintiff cannot represent a class alleging constitutional claims that the named plaintiff does not have standing to raise." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (overturning class certification where class representative was convicted prisoner purporting to represent convicted and non-convicted prisoners and Fourth Amendment claim only applied to the non-convicted). No Plaintiff has standing for an Eighth Amendment claim, so this claim must be dismissed. *Mitchener v. Curiosity Stream, Inc.*, 815 F. Supp. 3d 845, 850-51 (N.D. Cal. 2025) (granting motion to dismiss where named plaintiff did not suffer same injury as all class members).

### II. PLAINTIFFS FAIL TO ALLEGE ANY CONDITION OF CONFINEMENT THAT VIOLATES THE FOURTEENTH AMENDMENT.

#### A. *Pierce*, not *Brackens*, is Applicable to Plaintiffs' Claim Concerning Outdoor Recreation and Access to Sunlight at CJ2.

In *Pierce v. City & County of San Francisco*, the plaintiffs (including Ms. Page, who is also a plaintiff here) alleged the City "denies all pretrial detainees and convicted prisoners" in CJ2 of "any

[1] It is not at all clear the CJ2 inmate class *does* in fact include convicted prisoners. Plaintiffs themselves seem confused. In parts of the opposition, Plaintiffs contend "Every plaintiff and every member of the CJ2 Inmate Class *is a pretrial detainee*," Opp. at 1 (emphasis added), while elsewhere Plaintiffs assert that this putative class also includes those who have been convicted, Opp. at 8.

opportunities for *fresh air, direct sunlight, or time outside for exercise or recreation*, or otherwise any meaningful recreation, in violation of Title 15 of the California Code of Regulations 1065, and the prisoners' Fourteenth and Eighth Amendment rights." No. 19-cv-07659-JSW, ECF No. 66 (Second Amended Complaint) ¶ 3 (emphasis added). And Plaintiffs here allege: "inmates housed at CJ2 have never had *outdoor recreation* and cannot have *direct sunlight* on their skin, eyes, or bodies while in the custody of the San Francisco Sheriff's Office," which "conditions violate California Code of Regulations, title 15, section 1065, and inmates' rights under the Eighth and Fourteenth Amendments." Compl. ¶¶ 45, 47 (emphasis added). These claims are not "materially different."

The *Brackens* case, on the other hand, *is* materially different. As Plaintiffs admit, *Brackens* concerned "CJ3" in "San Bruno," a different facility, in a different location. Compl. ¶¶ 48, 50. As the *Brackens* court noted, "the facts in the two cases are distinct. The claims in [*Brackens*] pertain only to conditions in County Jails 4 and [3],"[2] while *Pierce* "pertains to [CJ2], a different facility entirely." *Norbert v. San Francisco Sheriff's Dep't*, No. 19-cv-02724-SK, ECF No. 148 (Order Denying Mot. to Relate) at 2. And the findings in *Brackens* were based on the evidence of harm to the *Brackens* plaintiffs at CJ3. *See Brackens v. City & Cnty. of San Francisco*, 2023 WL 6847576, at *30 (N.D. Cal. Oct. 17, 2023) ("Specifically, the Ninth Circuit disavowed the statement by the undersigned that lack of access to direct sunlight *per se* constitutes punishment . . . .").

Accordingly, *Pierce*, not *Brackens*, is on point. Plaintiffs' outdoor recreation and sunlight access claim here arises from the same alleged physical and operational aspects of the same detention facility as the outdoor recreation and sunlight access claim in *Pierce*. Plaintiffs here allege no facts that differentiate this case from *Pierce*. *Compare Pierce*, 2022 WL 17418974, at *1, 3-4 (N.D. Cal. Dec. 5, 2022), *and Pierce*, No. 19-cv-07659-JSW, ECF No. 66 (Second Amended Complaint) ¶ 3, *with* Compl. ¶¶ 3, 4, 45, 47. Plaintiffs' outdoor recreation and sunlight access claims should be dismissed.

[2] The *Brackens* complaint initially concerned two San Francisco jails, County Jail 4 and County Jail 5. Subsequently, County Jail 4 was closed, and County Jail 5, which was the jail located in San Bruno, was re-named "County Jail 3." *See, e.g.*, *Norbert v. San Francisco Sheriff's Dep't*, 2023 WL 12033253, at *7 (N.D. Cal. Apr. 5, 2023).

**B. Plaintiffs' Allegations Show They Received Adequate Medical Care.**

Plaintiffs' opposition makes clear that their "inadequate medical care" claim does not concern the medical treatment they received at CJ2 at all. Rather, Plaintiffs contend the medical care they received at CJ2 failed to fix other alleged conditions of confinement. Opp. at 5 (arguing CJ2 medical staff "never advocated for the sunlight, exercise, or nutrition"). In other words, their "inadequate medical care claim" just restates their other conditions of confinement claims. Plaintiffs' complaint shows they all received adequate care (*e.g.*, prescription medication, insulin, GLP-1s) for their *medical* conditions (*e.g.*, diabetes, pain, sleep issues, hypertension, digestive issues, anxiety attacks, allergies, and obesity). *See* Compl. ¶¶ 22-25, 28, 29. To the extent Plaintiffs have any claim at all, it has nothing to do with the adequacy of the medical care they admit they received. *See Russell v. Lumitap*, 31 F.4th 729, 739 (9th Cir. 2022) (citation omitted) ("In the inadequate-medical-care context, the 'substantial risk of serious harm' prong [i]s met if there [i]s a 'serious medical need,' such that a 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"). Plaintiffs fail to state an inadequate medical care claim.

**C. Plaintiffs Fail to Allege Defendants Served Inadequate Food.**

**1. Plaintiffs' Allegations Fail to Establish the Food at CJ2 was Inadequate.**

Plaintiffs' opposition confirms their factual allegations amount to nothing more than that food at CJ2 is sometimes served cold, sometimes on grubby trays, and is light on fresh produce. But "[t]he fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted); *see also Sand v. Humboldt Cnty. Corr. Facility*, 2024 WL 1289694, at *2 (N.D. Cal. Mar. 25, 2024) (dismissing complaint alleging "that on several occasions he found hair, rocks, cleaning chemicals or spittle in his food"). Nor does a limited amount of "fresh produce" constitute a constitutional deprivation; a plaintiff may still be receiving their "minimal daily requirements for calories, protein, and vitamins." *LeMaire*, 12 F.3d at 1455 (finding "Nutraloaf," created by "blending a variety of foods," which "resulting substance is then frozen and later baked into a solid loaf," was nevertheless "adequate to maintain health"); *see also Poslof v. Arce*, 2025 WL 786356, at *9 (N.D. Cal. Mar. 12, 2025) ("To show that the meals were inadequate, [inmate] must

provide facts showing that the meals were calorically insufficient and/or lacked essential nutrients.”).

And Plaintiffs allege no facts, only conclusory assertions, to support their speculation that any such conditions caused them any alleged digestive issues. *See Morris v. Jennings*, 2014 WL 2700926, at *2-3 (E.D. Cal. June 13, 2014) (dismissing claim because “[a]lthough plaintiff attempts to link the unsanitary food to his stomach problems, he does so in an entirely conclusory manner,” where he alleged “he had to see the doctor due to stomach problems and was told by the doctor that the pain he suffered was because of something he had eaten” and “that the only food he ate was the food the guards were serving”). Only one plaintiff, Ms. Boyd, attempts to allege any specifics, claiming that “[i]n Mid-March” she experienced “vomiting, [and] diarrhea.” Compl. ¶ 30. But even there, Ms. Boyd failed to allege what about the food service at CJ2 allegedly caused her food poisoning, whether it was undercooked food, an unsanitary tray, or lack of fresh produce; she could only link her alleged food poisoning to the food at CJ2 in a conclusory, and thus insufficient, manner. And in any event, “a single incident of unintended food poisoning . . . does not constitute a violation of the constitutional rights of the affected prisoners.” *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988); *see also Lyles v. Villanueva*, 2019 WL 7206453, at *4 (C.D. Cal. Aug. 29, 2019) (“two isolated instances of food poisoning over some unknown period of time, without more, is insufficient to state a valid claim” based on allegedly cold or contaminated food).

Plaintiffs also argue their weight gain is “a symptom of dietary injury.” Opp. at 6. It is not clear what Plaintiffs mean by “dietary injury.” To the extent they mean their weight gain is indicative of unhealthy food, as explained in Defendants’ motion, any such contention is undercut by the allegations in their complaint that they also lost weight during their incarceration. *See* Compl. ¶¶ 26, 27. They can only speculate their weight gain was related to the healthfulness of the food served at CJ2. There are also many other possible and likely reasons for their weight gain other than unhealthy food. Plaintiffs argue “[w]here the alleged facts support ‘two alternative explanations,’ the complaint survives.” Opp. at 6 (citation omitted). But the Ninth Circuit has clarified: “[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are ‘merely consistent with’ their favored explanation but are also consistent with the alternative explanation.” *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir.

2013) (citation omitted). The complaint must include facts "tending to exclude the possibility that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*." *Id.* One possible, and more likely, "alternative explanation" for Plaintiffs' weight gain is they are "being fed adequately." *LeMaire*, 12 F.3d at 1456.[3] Plaintiffs' opposition points to no factual allegations that get them beyond "the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (cleaned up). Plaintiffs fail to allege the food at CJ2 was inadequate.

**2. Defendants Cannot Be Vicariously Liable for Aramark's Food Service.**

Plaintiffs' opposition also confirms their food service-related claim against the City is based solely on their assertion the City "contract[s] with and supervise[s] Aramark." Opp. at 7. But "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). And the same is true for supervisors like the Individual Defendants. *See, e.g.*, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiffs contend "[t]heir argument is that Defendants' *own* policy . . . inflicts the deprivation." Opp. at 7. But tellingly, Plaintiffs do not point to any allegation in their complaint describing the nature of that "policy," or explaining how that "policy" caused any "deprivation."

Plaintiffs' reliance on *West v. Atkins* misses the point. There, the Supreme Court held that the state's contractor acted under "color of law" for the purposes of Section 1983 and thus could be sued under that statute. *See West v. Atkins*, 487 U.S. 42, 57-58 (1988). But Plaintiffs have not sued the City's contractor, Aramark. They sued the City and its employees but failed to allege any conduct by the City or any Individual Defendant that would make them liable for anything related to Aramark's food service at CJ2. Defendants do not contend Aramark's involvement "shield[s them] from liability." Opp. at 7. Rather, under federal law, it is insufficient to merely allege the City hired, or used, Aramark, which is all Plaintiffs have done here. *Cf. Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997) ("In the broadest sense, every injury is traceable to a hiring decision. Where a court

---

[3] Plaintiffs complain that Defendants "are litigating facts" but it is not clear what their point is. Defendants are indeed "litigating facts," more specifically, the facts alleged (and missing) in Plaintiffs' complaint. To survive a motion to dismiss, Plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Plaintiffs' allegations here fail to do so.

fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.”).

**D. Plaintiffs Allege Only Temporary Issues With Sanitation and Habilitation.**

Plaintiffs do not dispute “the Fourteenth Amendment” only “prohibits substantial and prolonged deprivations of sanitation,” but not short-term or temporary deprivations. *Sanchez-Martinez v. Freitas*, 2023 WL 1070352, at *3 (N.D. Cal. Jan. 27, 2023) (citation omitted).

Contrary to their argument, Plaintiffs’ allegations fall far short of alleging “chronic” maintenance and sanitation issues. Plaintiffs’ contention that “demand[ing] that the Complaint specify dates and durations . . . exceeds what Rule 8 requires” is not well taken. The dates and durations of alleged unconstitutional conditions of confinement are basic facts necessary for an adequate “short and plain statement of the claim”. Fed. R. Civ. P. 8(a)(2). *See, e.g.*, *Soloman v. San Francisco Cnty. Jail*, 2026 WL 1422035, at *1-2 (N.D. Cal. May 20, 2026) (dismissing pretrial detainees’ claim they “have to take cold showers” at CJ3, ordering they “provide facts about . . . how often the showers were cold, [and] how cold they were,” and their claim CJ3 “has been giving detainees clothes with lice and bringing detainees with lice and scabies into general population without medically clearing them,” ordering they “provide more information about if and when they had lice or scabies or what other harm Plaintiffs suffered from other detainees' lice and/or scabies”). Plaintiffs’ contention they need discovery to know when or how often they allegedly experienced constitutional deprivations should be rejected. Plaintiffs should know such basic facts about the harms they contend they suffered. To the extent they do not, it only underscores the speculative nature of their sanitation claims.

Plaintiffs allege that hot water is “intermittent,” that “[s]ometimes there is hot water for” only “a minute or two.” Compl. ¶¶ 27, 29, 81. That this intermittency allegedly begun in August 2021 does not state a “substantial and prolonged deprivation.” Plaintiffs fail to allege when, or how frequently, or for how long, Plaintiffs have had to go without a hot shower since August 2021. Without such allegations, Plaintiffs cannot state a claim. *See, e.g.*, *Hernandez v. Olmos*, 2013 WL 5718566, at *3 (E.D. Cal. Oct. 18, 2013) (“To the extent that [inmate] relies on the denial of ‘regular showers’ and/or the denial of showers on ‘multiple’ occasions during a two month period, his claim is factually insufficient.”).

Plaintiffs argue that they "are *ordered* to flush [their toilets] only once or twice per hour." Opp. at 7 (citing Compl. ¶¶ 27, 84). But courts in this district have found significantly longer periods of clogged or inoperable toilets—"two days" and "four consecutive days," compared to the maximum one hour alleged here—were "temporary" and did not rise to the level of a constitutional violation. *Walker v. Ahern*, 2018 WL 2267745, at *8 (N.D. Cal. May 17, 2018); *Baqleh v. Lake Cnty. Sheriff's Dep't*, 2026 WL 880151, at *1-2 (N.D. Cal. Mar. 31, 2026). Plaintiffs did not address this authority, cited in Defendants' motion. *See* Mot. at 7. Plaintiffs also fail to allege how frequently each Plaintiff, if any, has been limited to flushing their toilet "once or twice per hour."

With respect to "lice and scabies," Plaintiffs fail to allege facts to support their conclusory assertion that there is a "constant and chronic" "infestation." Plaintiffs' opposition confirm their only allegation in this regard is Ms. Page's allegation she has "had lice and scabies at least ten (10) times" in six years. Compl. ¶ 27. But she does not allege when these instances occurred, whether they were close in time to each other, or even within the statute of limitations. And notably, none of the other eight Plaintiffs, all detainees in CJ2, allege ever having lice or scabies. *See* Compl. ¶¶ 22-26, 28-31. Plaintiffs' allegations fail to establish a "constant and chronic" "infestation" of CJ2.

### E. Plaintiffs Cannot Cobble Together a Fourteenth Amendment Claim From a Combination of Otherwise Constitutional Conditions of Confinement.

Having failed to allege any single unconstitutional condition of confinement, Plaintiffs argue the Court can find a violation of the Fourteenth Amendment based on a "combination" of conditions. Plaintiffs cite *Wilson v. Seiter* (Opp. at 8), which stated, "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." 501 U.S. 294, 304 (1991) (original emphasis).

But *Wilson* does not stand for the proposition that Plaintiffs can state a claim based on "totality of the conditions." No Eighth Amendment violations may be "based on the 'totality of the conditions' at a prison." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995). Individual conditions that do not offend the Eighth

Amendment "cannot in combination amount to an Eighth Amendment violation." *Hoptowit*, 682 F.2d at 1247. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305. Plaintiffs must "identify specific conditions" that fail to meet constitutional requirements. *Hoptowit*, 682 F.2d at 1247. This they have failed to do, as set forth above.

## III. PLAINTIFFS' EQUAL PROTECTION CLAUSE CLAIM MUST BE DISMISSED.

### A. "Unequal Treatment" Does Not Equate to "Unconstitutional Discrimination."

Plaintiffs fail to allege discriminatory intent, and they do not deny it. This alone is fatal to their section 1983 claim based on equal protection. *G.B. by & through G.P. v. United States Env't Prot. Agency*, 172 F.4th 1042, 1054–55 (9th Cir. 2026) (cleaned up) ("The denial of equal protection is actionable where the government acts with discriminatory intent or purpose."); *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022 (9th Cir. 2020) (plaintiff must plead discriminatory intent for section 1983 Equal Protection Claim). Plaintiffs argue they are not required to allege discriminatory intent because the policy they attack is not facially neutral, but their authorities do not support this view. Opp. at 9. These cases support the view that allegations or proof of intent are required where an action or policy is facially neutral, not that the absence of neutrality negates the Plaintiffs' obligation to plead intent. *See Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 273-74 (1979) (concerning facially neutral classification but requiring allegation of intent); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-68 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.");[4] *see also Jeldness v. Pearce*, 30 F.3d 1220, 1227-29 (9th Cir. 1994) (noting intent required for Equal Protection claim). What's more, Plaintiffs do not invoke a statute or regulation—only the reality of segregating inmates based on sex and different conditions of confinement as a result. It is impossible from these allegations to tell whether the policy in question is facially neutral or not.

---

[44] Plaintiffs cite *Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999) for the proposition that gender classification on its face requires no allegation of discriminatory intent. Here, the plaintiff was a convicted sex offender, and the classifications at issue were categories of sex offenders. Classifications based on gender—facial or otherwise—were not before the court.

Plaintiffs' claim fails regardless. Plaintiffs assert (even though they did not so *allege*) that the policy they challenge is the segregation of male and female inmates and the decision to house women at CJ2. Mot. at n.6; Opp. at 9-10. But no authority Plaintiffs cite stands for the proposition that segregating inmates by sex—or that housing female inmates in a separate facility that has different features and amenities—runs afoul of Equal Protection. In fact, authorities both parties cite suggest quite the opposite. *See Jeldness*, 30 F.3d at 1227-29 (in correctional facilities, "sex segregation is the accepted norm"); *Roubideaux v. North Dakota Dep't of Corr. & Rehab.*, 570 F.3d 966, 974-75 (8th Cir. 2009) (observing "it is appropriate to segregate male and female inmates on the basis of gender" and noting "the program differences [in a carceral environment] may result" from the determination to house women and men separately); *Pitts v. Thornburgh*, 866 F.2d 1450, 1458-61 (D.C. Cir. 1989) (noting segregating of inmates by sex is commonplace and there are permissible "realit[ies] of unequal treatment" when inmates are segregated by sex). None of these examples run afoul of *Craig v. Boren*, 429 U.S. 190, 198 (1976) or *United States v. Virginia*, 518 U.S. 515, 531-33 (1996). The former concerned the constitutionality of imposing different age limits for genders to purchase beer based on dubious statistics concerning drunk driving arrests, and the latter concerned whether admission into a male-only military academy was inherently unsuitable for women. *See Virginia*, 518 U.S. at 533 (heightened scrutiny does not make sex a proscribed classification).

*Pitts* is instructive. There, a class of female inmates argued that their being housed at a facility farther away from the city than the facility that housed male inmates violated their rights under the Equal Protection Clause. *Pitts,* 866 F.2d at 1451-52. Applying heightened scrutiny,[5] the court ruled there was no violation of the Equal Protection Clause because the determination to segregate inmates by sex was commonplace and differences in conditions of confinement resulting from that segregation, without more, did not show actionable invidious discrimination. *Id.* at 1451-56. In so holding, the court noted gender was not being used as "an inaccurate proxy for other, more germane bases of classification . . . *but rather directly responds to and entirely correlates* with the more pervasive gender classification existing in both federal and state prison systems." *Id.* at 1459 (quoting *Craig*, 429

[5] None of Defendants' arguments depend on applying a standard less than heightened scrutiny.

U.S. at 198) (emphasis added). There, as here, Plaintiffs have not alleged any facts showing that "bias, traditional stereotypes, or outdated notions of the role of women" play into the run-of-the-mill decision to segregate women from men or the decision to house women at CJ2. *Id.* at 1460. Any argument by Plaintiffs to the contrary improperly "conflat[es] . . . unequal treatment" and "unconstitutional discrimination." *See id.* Plaintiffs have not alleged facts reflecting more than a disproportionate impact of a policy on female inmates, and their Equal Protection claim should be dismissed. *See G.B.*, 172 F.4th at 1055 (Equal Protection claim can be resolved on the pleadings "where the plaintiff alleges facts reflecting no more than a disproportionate impact on a classified group" rather than discrimination as a motivating factor).

**B. Male Detainees Are Not Similarly Situated to Female Detainees.**

Plaintiffs have not alleged that female detainees at CJ2 are similarly situated in relevant respects to male inmates. First, Plaintiffs concede that the male inmates at CJ3 are not similarly situated to female inmates at CJ2 with respect to the policies they contest. Opp. at 10-11. Plaintiffs could hardly argue otherwise. *See Fausia v. Cates*, 2012 WL 781817, at *8 (C.D. Cal. Jan. 13, 2012), report and recommendation adopted, 2012 WL 779341 (C.D. Cal. Mar. 8, 2012), aff'd, 520 F. App'x 541 (9th Cir. 2013) (citation omitted) (detainees at one facility or unit are not similarly situated to detainees at other facilities or units for Equal Protection purposes). Second, Plaintiffs have not alleged that female detainees at CJ2 are similarly situated to male inmates *at CJ2* (or, for that matter, to any other group of male inmates) with respect to the challenged policy, which, again, is the determination to segregate male and female detainees and to house women at CJ2. In their motion, Defendants did not concede that male inmates at CJ2 were similarly situated. Rather, Defendants argued that "*if any group of male inmates*" was similarly situated, it is the male inmates housed at CJ2. Mot. at 10 (emphasis added).[6] Defendants *also* pointed out, however, that the Complaint did not allege facts concerning "how this particular group of inmates' interaction with the physical facilities of CJ2 differs from female inmates at CJ2 or that male inmates at CJ2 specifically have better access to programming, services, or vocational opportunities than do female inmates—"all factual allegations

[6] Plaintiffs' argument that Defendants conceded male inmates at CJ2 were similarly situated misrepresents Defendants position.

necessary to show CJ2's male inmates were similarly situated. *Id.* Plaintiffs have no rejoinder for this argument, and therefore concede the point.

Plaintiffs' attempt to argue that *Roubideaux* and *Klinger v. Department of Corrections*, 31 F.3d 727, 731-34 (8th Cir. 1994) conflict with Ninth Circuit law should be rejected. *See Harrison v. Kernan*, 971 F.3d 1069, 1078–79 (9th Cir. 2020) (citing *Roubideaux* as example of successfully crafted constitutionally sound gender-based policies, even where unequal services provided to male and female inmates); *see, e.g., Fishman v. Williams*, 2017 WL 4075136, at *8 (C.D. Cal. Sept. 13, 2017) (applying *Klinger*). First, Plaintiffs mischaracterize the purpose to which Defendants put these authorities: Defendants cited each case to support their arguments concerning the requirement of pleading intent. Second, Plaintiffs do not explain how these authorities supposedly fail to require a showing of being similarly situated "in those respects relevant to the challenged policy." Indeed, their reasoning suggests the contrary. *Roubideaux*, 570 F.3d at 974–75 (cleaned up) (noting it is necessary to "precisely define the claim in order to determine what government action is being challenged"); *Klinger*, 31 F. 3d at 731-32 (emphasis added) (noting the "similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group *for purposes of the challenged government action*" before carefully parsing the plaintiffs' allegations and determining the groups were not "similarly situated for purposes of prison programs and services"). Plaintiffs' Equal Protection Claim must be dismissed.

## IV. PLAINTIFFS' FAIL TO ALLEGE ANY MUNICIPAL POLICY.

Plaintiffs contend 34 paragraphs from their complaint "name[ ] the challenged [City] policies in detail." Opp. at 12. The cited paragraphs, however, only prove Defendants' point. Those paragraphs merely describe the alleged conditions of confinement at issue; in other words, the alleged deprivations of their constitutional rights. But to state a *Monell* claim against the City, Plaintiffs must do more. Plaintiffs must allege that a "policy" of the City, amounting to "deliberate indifference," was the "moving force" behind those alleged constitutional deprivations. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (cleaned up). The cited paragraphs do not specify the nature of the City "policy" that supposedly caused the alleged constitutional violations. Plaintiffs are left with only conclusory assertions indistinguishable from the allegations in *AE ex. rel. Hernandez*

*v. County of Tulare*, which the Ninth Circuit found insufficient to state a claim. 666 F.3d 631, 637 (9th Cir. 2012) (cleaned up) (finding insufficient the allegation "that Defendants 'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs'" elsewhere alleged in the complaint). Plaintiffs' complaint is fatally lacking in "facts regarding the specific nature of th[e] alleged 'policy, custom or practice'" at issue. *Id.*

Plaintiffs cite *Pembaur v. City of Cincinatti*, 475 U.S. 469 (1986), arguing that a "single" "decision" of Sheriff Miyamoto can "establish[ ] municipal liability." Opp. at 12. But the only "decision" of Sheriff Miyamoto arguably alleged in Plaintiffs' complaint is that he "took no action to make sunlight available for inmates at CJ2." Compl. ¶ 92. Plaintiffs do not identify any other "decision" of Sheriff Miyamoto with respect to any of the other alleged constitutional violations at issue. Even with respect to that single alleged decision, however, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*." *Pembaur*, 475 U.S. at 481-82 (emphasis added). And "whether a particular official has 'final policymaking authority' is a question of *state law*." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion)(citation omitted). It is not enough to simply allege the legal conclusion that a defendant had final policy-making authority—a plaintiff must allege facts to support that conclusion. *See Rasku v. City of Ukiah*, 2020 WL 2494563, at *8 (N.D. Cal. May 14, 2020) (dismissing ratification claim where plaintiff alleged the Chief of Police "had final policymaking authority for the City of Ukiah concerning the acts of Officer Murray" and knew and approved of subordinate's unlawful act because "[t]hese are not facts and instead are conclusions"). Plaintiffs fail to allege facts from which the Court can infer that Sheriff Miyamoto had final policy-making authority over making sunlight available at CJ2, a facility allegedly "designed and constructed with no outdoor access and no exposure to direct sunlight" (Compl. ¶ 45).

Plaintiffs cite *Castro v. County of Los Angeles*, where, Plaintiffs argue, the Ninth Circuit affirmed *Monell* liability where the "physical configuration of a cell, combined with its operational policies, posed an obvious risk of harm." Opp. at 12 (citation omitted). The missing piece from Plaintiffs' complaint here, however, is any allegation of the specific nature of the "operational

policies" at issue. In *Castro*, the court did "not decide" that the "architecture of the West Hollywood police station's sobering cell" constituted "a policy, custom, or practice." 833 F.3d 1060, 1075 (9th Cir. 2016). "[T]he design of the cell [wa]s only the backdrop for the entity defendants' policy or custom." *Id.* The "policy" at issue in *Castro* were the "deliberate choices *in light of* the poor design and location of the sobering cell." *Id.* Here, Plaintiffs only allege the "backdrop" of the "architecture" of CJ2. Plaintiffs fail to specify what "deliberate choices in light of" that design are at issue. In addition, the architecture of CJ2 is only relevant to Plaintiffs' outdoor exercise and sunlight access claim. Plaintiffs' complaint is completely devoid of any allegation of any "policy" that was the "moving force" for the alleged deprivations related to food, medical care, building maintenance and sanitation, or equal protection.

## V. PLAINTIFFS FAIL TO ALLEGE WRONGDOING BY ANY INDIVIDUAL DEFENDANT.

Plaintiffs appear to agree on the applicable standard for stating a Section 1983 claim against the Individual Defendants: "[a] supervisor is liable under section 1983 if he or she was personally involved in the constitutional deprivation or if there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Opp. at 13 (citation omitted). As explained in Defendants' motion, however, Plaintiffs fail to meet this standard because "Plaintiffs' complaint is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing by each Defendant." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). Tellingly, in their opposition, Plaintiffs do not cite or reference any allegation of specific wrongdoing by any Individual Defendant contained in their complaint.

Plaintiffs cite *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). But *Starr* only highlights the deficiencies of Plaintiffs' complaint. As the Ninth Circuit explained in *Hydrick*, the plaintiff in *Starr* had "many allegations in the complaint detailing what Sheriff Baca knew or should have known, and what Sheriff Baca did or failed to do," including a letter he received, weekly reports he received, an MOU he entered with the DOJ, a DOJ report, and numerous prior similar incidents of which he had notice. *Hydrick,* 669 F.3d at 941 (cleaned up). In contrast, Plaintiffs allege no such specifics about the Individual Defendants.

*Flemming v. County of Alameda*, 2015 WL 846713, at *4-5 (N.D. Cal. Feb. 25, 2015), which applied *Hydrick* and *Starr*, is instructive. In *Flemming*, a pretrial detainee brought a claim against the Alameda County Sheriff who the plaintiff alleged was "charged with developing and enforcing" department policies, responsible for inmates detained in County jails, and responsible for training and supervising deputies. *Id.* at *4. He further alleged his constitutional rights were violated because of the Sheriff's policies and procedures as maintained and enforced by Sheriff Department employees. *Id.* at *4-5. The court determined these allegations were insufficient. Plaintiffs' allegations concerning the Individual Defendants here (Compl. ¶¶ 34-37) are no more specific than the "bald and conclusory" allegations found insufficient in *Flemming*.

The closest Plaintiffs come to alleging culpable action by any of the Individual Defendants are their allegations concerning Sheriff Miyamoto with respect to their outdoor exercise and sunlight access claim only. But even though Plaintiffs allege Sheriff Miyamoto was aware of the result of the *Brackens* case, yet "took no action to make sunlight available for inmates at CJ2" (Compl. ¶ 92), Plaintiffs nevertheless fall short of stating a supervisor claim against Sheriff Miyamoto for "deliberate indifference." The court's ruling in *Pierce* distinguishes this case from *Starr.* As discussed above, "the facts in the two cases," *Brackens* and *Pierce*, "are distinct. The claims in [*Brackens*] pertain only to conditions in [CJ3]," while *Pierce* "pertains to [CJ2], a different facility entirely." *Norbert*, ECF No. 148. And in *Pierce*, where the plaintiffs also alleged that the lack of direct sunlight and outdoor recreation at CJ2 (as opposed to CJ3) violated the Fourteenth Amendment, the court entered summary judgment for the City and the Sheriff. *See Pierce*, 2022 WL 17418974, at *6. Sheriff Miyamoto's knowledge of the *Brackens* case alone is thus insufficient to state a supervisory claim against him. Plaintiffs fail to state a Section 1983 claim against any Individual Defendant.

## VI. PLAINTIFFS' STATE LAW CLAIMS FALL WITH THEIR SECTION 1983 CLAIMS.

Plaintiffs do not dispute that their California Constitution, Bane Act, and negligence claims are coextensive with their federal Section 1983 claims. Because their Section 1983 claims fail for the reasons set forth above, their California Constitution, Bane Act, and negligence claims must be dismissed as well. With respect to Plaintiffs' intentional infliction of emotional distress claim, Plaintiffs did not oppose Defendants' arguments (Mot. at 15). The claim must thus be dismissed too.

*See, e.g.*, *Qureshi v. Countrywide Home Loans, Inc*., 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an "abandonment of those claims").

**VII. THE CITY IS IMMUNE TO PLAINTIFFS' TORT CLAIMS.**

Plaintiffs' contention that California Government Code § 845.6 saves their state tort claims against the City from the immunity of California Government Code § 844.6 is without merit. The exception set forth in Section 845.6 only applies where a public "employee knows or has reason to know that the prisoner is in need of *immediate* medical care and he fails to take reasonable action *to summon such medical care*." Cal. Gov't Code § 845.6 (emphasis added). Plaintiffs do not allege any incident where any Plaintiff was "in need of immediate medical care" and a City employee failed to "summon" it. The City is immune from Plaintiffs' negligence and intentional infliction of emotional distress claims. *See also Norbert v. San Francisco Sheriff's Dep't* (*Norbert I*), 2020 WL 8675997, at *32 (N.D. Cal. Jan. 31, 2020).

**CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' memorandum (ECFs No. 18), the Court should dismiss each of Plaintiffs' claims against all of the Defendants.

Dated: August 21, 2026

DAVID CHIU
City Attorney
TARA M. STEELEY
Chief Attorney, Government Litigation
EDMUND T. WANG
JESSE E. LANIER
Deputy City Attorneys

By: s/Edmund T. Wang
EDMUND T. WANG
JESSE E. LANIER

Attorneys for all Defendants